IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JESSE KAISER,

    Defendant.

No. CR11-0107

REPORT AND RECOMMENDATION

## TABLE OF CONTENTS

*I.*    *INTRODUCTION* ........................................ 1

*II.*   *PRIOR PROCEEDINGS* .................................. 2

*III.*  *RELEVANT FACTS* ..................................... 3

*IV.*  *DISCUSSION* .......................................... 5
      *A.*    *Application to Fire Court-Appointed Counsel* ............... 5
      *B.*    *Application to Withdraw Guilty Plea* ..................... 7

*V.*   *RECOMMENDATION* ................................... 9

## I. INTRODUCTION

On the 28th day of August, 2013, this matter came on for hearing on the letter (docket number 69) from Defendant filed on August 22, 2013, stating he "wish[ed] to fire [his] court appointed attorney" and withdraw his guilty plea. The Government was represented by Assistant United States Attorney Tony Morfitt. The Defendant appeared personally and was represented by attorney Dennis McKelvie.

## II. PRIOR PROCEEDINGS

On June 21, 2011, Defendant Jesse Kaiser was charged by Indictment with conspiracy to distribute 100 kilograms or more of marijuana (Count 1) and possession with intent to distribute 100 kilograms or more of marijuana (Count 2).[1] A Superseding Indictment was filed on July 26, 2011, correcting the citation to the statute under which Defendant was charged. Defendant did not appear for an initial appearance and arraignment until nearly two years later, on May 21, 2013. The docket reflects that Defendant was confined at the Northern Nevada Correctional Center in Carson City, Nevada, and was writted to this District for prosecution.

At his arraignment, Defendant entered a plea of not guilty, and trial was scheduled on July 22, 2013. On June 24, the Court was advised that Defendant had agreed to change his plea, and a plea change hearing was scheduled on July 1. Defendant appeared on that date, together with his attorney Dennis McKelvie, and entered a plea of guilty to conspiracy to distribute 100 kilograms or more of marijuana (Count 1 of the Superseding Indictment). I then filed a Report, recommending that the district court accept Defendant's guilty plea. Defendant filed a waiver of any objections to the Report and Recommendation, and Chief Judge Linda R. Reade accepted Defendant's guilty plea on July 1, 2013.

On August 22, Defendant filed the instant letter, asking that he be permitted to fire his attorney and withdraw his guilty plea. The letter is dated August 13, 2013.

---

[1] Also charged in the Indictment was a co-Defendant, Josh Ridenour. Ridenour pleaded guilty to the conspiracy charge and was sentenced on December 15, 2011 to 60 months' imprisonment.

## III. RELEVANT FACTS

On July 1, 2013, Defendant appeared before me, together with his attorney, and pleaded guilty to Count 1 of the Superseding Indictment.[2] After ascertaining that Defendant was competent to enter a guilty plea, I reminded him that Mr. McKelvie had been appointed to represent Defendant and that his representation would continue throughout the time of trial at no expense to Defendant. When I asked whether Defendant was "generally satisfied with the representation that you've received from your attorney," Defendant responded "yes."

I then reviewed with Defendant his trial rights. Defendant told me he understood all of his rights, including the right to a speedy and public trial before a jury of 12 people, the presumption of innocence, the right to confront witnesses, the right to present a defense, and the right to remain silent at trial if he chose to do so. Defendant said he understood his rights, and acknowledged that if he entered plea of guilty, he was giving up his right to a jury trial.

I also explained to Defendant that before Chief Judge Reade could accept his guilty plea, it was necessary to establish that there are facts which would support a conviction in this case. I reviewed each element of the crime, and told Defendant the Government would have to prove each element at trial. Defendant advised the Court that he understood each element, and he then admitted each element.

I also reviewed a plea agreement which was entered into between the parties. Defendant acknowledged that he had signed the agreement after Mr. McKelvie had reviewed it with him in detail. Defendant told me that he understood all of the information on the plea agreement, and did not have any questions about the agreement reached

---

[2] At the beginning of the hearing, I advised Defendant that he had the right to have a district court judge preside over any guilty plea proceeding. Defendant agreed that the guilty plea proceeding could be conducted by a magistrate judge, and a written consent form signed by Defendant and his attorney was filed.

between himself and the Government. Defendant then specifically admitted the allegations found in the stipulation of facts contained in the plea agreement, thereby establishing his guilt.

I then reviewed with Defendant the sentence which could be imposed. Specifically, I told Defendant that he would be sent to prison for at least five years. Defendant was told that there is a mandatory minimum five-year prison term, with a maximum prison term of 40 years.[3] Also, Defendant was advised that he could be fined up to $2 million and there is a mandatory special assessment of $100. In addition, Defendant was told that after he is released from prison he will be placed on supervised release for at least four years and he could be on supervised release for the balance of his life.

I explained the requirements of supervised release to Defendant, and he told me that he understood. Defendant also said he understood the loss of rights associated with a felony conviction. I then advised Defendant that "after your guilty plea is accepted by Judge Reade, you will have no right to withdraw your guilty plea." Defendant acknowledged that he understood that. I then explained the sentencing process and advised Defendant that he would have the right to appeal the sentence to the Eighth Circuit Court of Appeals.

At that point, I asked Defendant: "Has anyone forced or pressured you to plead guilty or made any promises to you to get you to plead guilty, other than what's in the plea

---

[3] At the plea change hearing, the prosecutor estimated that the Advisory Guideline range is 87 to 108 months, although I told Defendant that this is just an estimate, and that Chief Judge Reade is not bound by the terms of any agreement entered into between the parties or any recommendation of the attorneys. That is, the sentence imposed by Judge Reade could be higher or lower than the Guideline range predicted by the lawyers, and Judge Reade could depart or vary from whatever Guideline is established. Defendant was also reminded that Judge Reade could not sentence him below five years, which is the statutory mandatory minimum, even if she wanted to.

agreement?" Defendant responded "No, sir." After addressing the attorneys, I then spoke with Defendant again:

> THE COURT: Mr. Kaiser, we've covered a lot of information here this morning and I want to make sure that you understood it so that you don't come back next week or next month or next year and tell me that you were confused or that someone forced you to plead guilty. Have you been able to understand everything we've talked about today?

> DEFENDANT KAISER: Yes, your honor.

> THE COURT: Do you have any questions about it?

> DEFENDANT KAISER: No.

> THE COURT: Has anyone forced or pressured you to plead guilty?

> DEFENDANT KAISER: No, your honor.

> THE COURT Is your guilty plea voluntary?

> DEFENDANT KAISER: Yes, sir.

I then asked Defendant for the record how he pleaded to the charge of conspiracy to distribute 100 kilograms or more or marijuana as alleged in Count 1 of the Superseding Indictment. Defendant responded "guilty."

## IV. DISCUSSION

### A. Application to Fire Court-Appointed Counsel

In his letter to the Court, Defendant states that "I wish to fire my court appointed attorney." According to Defendant, "my attorney has a conflict of interest, and does not have my best interest at heart." It became apparent at the hearing, however, that

Defendant does not claim any actual conflict of interest by Mr. McKelvie. In fact, Defendant made no specific complaint regarding Mr. McKelvie's performance. Rather, citing Corpus Juris Secundum, Defendant claims that *all* attorneys have a conflict of interest because their first duty is to the court, rather than their client.[4]

The Sixth Amendment provides that in all criminal prosecutions, the accused shall have the right to assistance of counsel for his defense. It is well-established, of course, that if a defendant is unable to afford an attorney, one will be provided at public expense.[5] *Gideon v. Wainwright*, 372 U.S. 335 (1963). The Sixth Amendment also confers the right to proceed without an attorney. "While the Sixth Amendment does not explicitly guarantee the right of self-representation, such a right is 'necessarily implied by the structure of the Amendment.'" *United States v. Edelmann*, 458 F.3d 791, 808 (8th Cir. 2006) (quoting *Faretta v. California*, 422 U.S. 806, 819 (1975)).

---

[4] Defendant cites Corpus Juris Secundum, Volume 7, Section 4, for the following proposition: "The attorneys first duty is first to the court and public, not to the client, and wherever the duties to his client conflict with those he owes as an officer of the court in the administration of justice, the former must yield to the latter."

Corpus Juris Secundum states, in part, as follows:

> The privileges attendant to being licensed to practice as an attorney at law have concomitant obligations, including a fundamental public duty to assist the courts in the administration of law and resolution of legal controversies. An attorney acts not only as a client's representative, but also as an officer of the court and, accordingly, has a duty to serve both masters. As an officer of the court, an attorney's obligation to the courts and the public is as significant as his or her obligation to clients. Thus, an attorney occupies a dual position which imposes dual obligations.

7 C.J.S. Attorney & Client § 3.

[5] In this case, attorney Dennis McKelvie has been appointed to represent Defendant at public expense.

Accordingly, it is clear that Defendant has the right to fire his court-appointed counsel and proceed without an attorney. However, the right to self-representation is not absolute. The court may refuse a defendant's request for self-representation when the defendant is unable to "knowingly and intelligently" forego the traditional benefits associated with the right to counsel. *Id.* (quoting *Faretta*, 422 U.S. at 835). The request may also be denied if it is untimely, and the court "may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Id.*

Here, I addressed Defendant regarding the disadvantages of self-representation. I reminded Defendant that while he has pleaded guilty, there remains work to be done. It will be necessary to review the draft presentence investigation report when it is completed, and there will be a sentencing hearing. Defendant admitted that he does not have any formal legal training and is unfamiliar with the United States Sentencing Guidelines. I explained that an attorney would be helpful in reviewing the draft presentence investigation report and addressing any contested issues at the sentencing. Nonetheless, Defendant was persistent in his desire to fire Mr. McKelvie.

There is no reason for the Court to suspect that Defendant is not competent to represent himself. While he insists on espousing certain legal principles which have no application to this case, that fact alone does not render him incompetent. Based upon his written filings, his representations at the hearing, and his earlier appearances before the Court, I believe Defendant is competent to represent himself. Therefore, I believe that application to fire his court-appointed counsel should be granted. I also recommend that Mr. McKelvie continue as stand-by counsel and be prepared to represent Defendant at sentencing, if necessary.

### B. *Application to Withdraw Guilty Plea*

Defendant also asks that he be permitted to withdraw his guilty plea. According to Defendant's letter, "I have been under constant threat and duress to coerce my unconditional acceptance of a plea deal." When asked at the hearing where these threats

were coming from, Defendant could only point to the fact that he was told the penalties which are applicable to the charges.

The FEDERAL RULES OF CRIMINAL PROCEDURE provide that after the court has accepted a defendant's guilty plea, the defendant may withdraw his guilty plea if "the defendant can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). Here, Chief Judge Reade accepted Defendant's guilty plea on July 1, 2013. Accordingly, Defendant has the burden of showing a "fair and just reason" why he should be permitted to withdraw his guilty plea. *United States v. Smith*, 422 F.3d 715, 723-24 (8th Cir. 2005) (the defendant bears the burden of showing a fair and just reason to withdraw his guilty plea.); *United States v. Mugan*, 441 F.3d 622, 630 (8th Cir. 2006) (same). "The 'fair and just' standard is a liberal one, but it does not create an automatic right to withdraw a plea." *Smith*, 422 F.3d at 723 (citing *United States v. Wicker*, 80 F.3d 263, 266 (8th Cir. 1996)). "A guilty plea is a solemn act not to be set aside lightly." *United States v. Prior*, 107 F.3d 654, 657 (8th Cir. 1997) (citing *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992)).

Defendant asserts in his letter that his guilty plea was coerced by "constant threat and duress." Defendant provided no evidence to support that allegation, however, and it is belied by his statements made under oath to the Court at the plea change hearing. I specifically asked Defendant if "anyone forced or pressured you to plead guilty or made any promises to you to get you to plead guilty, other than what's in the plea agreement?" Defendant responded "no, sir." Later, after admonishing Defendant that I didn't want him to come back "next week or next month or next year and tell me that you were confused or that someone forced you to plead guilty," I asked Defendant a second time: "Has anyone forced or pressured you to plead guilty?" Defendant responded: "No, your honor."

There is no evidence to support Defendant's bald allegation that he was forced to plead guilty. Instead, it appears that Defendant has simply changed his mind. When

I asked Defendant when he came to this realization, he said he had been doing some reading while in jail. All defendants presumably "struggle with the issue of whether to plead guilty or to take their chances at trial." *United States v. Swick*, 262 F.3d 684, 686-87 (8th Cir. 2001). Simply changing one's mind does not, however, constitute "a fair and just reason" for withdrawing a guilty plea. *United States v. Gottlieb*, 849 F.2d 359, 360 (8th Cir. 1988) ("The plea of guilty is a solemn oath not to be disregarded because of belated misgivings about the wisdom of the same.").

It is not often that a defendant is permitted to withdraw his guilty plea. "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, 'the occasion for setting aside a guilty plea should seldom arise.'" *Morrison*, 967 F.2d at 268 (quoting *United States v. Rawlins*, 440 F.2d 1043, 1046 (8th Cir. 1971)). I believe Defendant has failed to meet his burden of showing a "fair and just reason" why he should be permitted to withdraw his guilty plea. Accordingly, I respectfully recommend that his application to withdraw his guilty plea be denied.

## V. RECOMMENDATION

For the reasons set forth above, I respectfully recommend the following:

1.     I recommend Defendant's application to fire his court-appointed counsel and represent himself be **GRANTED**. I also recommend that Mr. McKelvie continue as standby counsel.

2.     I recommend Defendant's application to withdraw his guilty plea be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need*

*to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on August 28, 2013.*

DATED this 30th day of August, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA